RECEIVED
IN ALEXANDRIA, LA

FEB 1 0 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

EUGENE H. MOORE                    CIVIL ACTION NO. 06-1353

VS.                                SECTION P

TERRY TERRELL, WARDEN              JUDGE TRIMBLE

                                   MAGISTRATE JUDGE KIRK

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of *habeas corpus*
(28 U.S.C. §2254) filed on July 19, 2006 by *pro se* petitioner
Eugene H. Moore. Petitioner is an inmate in the custody of
Louisiana's Department of Public Safety and Corrections. He is
incarcerated at the Allen Correctional Center, Kinder, Louisiana
where he is serving a hard labor sentence imposed following his
1997 conviction for distribution of cocaine and his subsequent
adjudication as a second felony offender (La. R.S.15:529.1) in
the Thirty-eighth Judicial District Court, Cameron Parish,
Louisiana.

This matter has been referred to the undersigned for
review, report, and recommendation in accordance with the
provisions of 28 U.S.C. §636, the standing orders of the court,
and the December 11, 2009 order of Judge Trimble. [doc. 21]

### Background

**A. Proceedings in the District Court and the United States Fifth Circuit Court of Appeals**

1. Petitioner filed the instant *habeas corpus* petition on August 4, 2006 raising four claims for relief. On December 11, 2006 he filed a supplemental pleading raising a fifth claim.

2. On October 10, 2006, United States Magistrate Judge Alonzo Wilson, relying on then controlling circuit law as announced in <u>Salinas v. Dretke</u>, 354 F.3d 425 (5th Cir. 2004), *cert. denied.* 541 U.S. 1032, 124 S.Ct. 2099, 158 L.Ed.2d 714 (2004), recommended dismissal of petitioner's *habeas* claims as time barred by the provisions of 28 U.S.C. §2244(d).[1] [doc. 2]

---

[1] Magistrate Judge Wilson, after having provided an exhaustive chronology observed: "Petitioner's judgment became final when the delays for seeking a direct appeal lapsed; it could not be 'de-finalized' by the ultimate reinstatement of his appeal rights that resulted when his Motion to Correct an Illegal Sentence was granted by the Third Circuit Court of Appeals. The Fifth Circuit has clearly held such. In <u>Salinas v. Dretke</u>, 354 F.3d 425, 429-430 (5th Cir.), *cert. denied*, 541 U.S. 1032, 124 S.Ct. 2099, 158 L.Ed.2d 714 (2004) the court noted that 'AEDPA provides for only a linear limitations period, one that starts and ends on specific dates, with only the possibility that tolling will expand the period in between. [citation omitted] ... nothing in AEDPA allows for a properly initiated limitations period to be terminated altogether by collateral state court action. Rather, the statutory framework only provides for the tolling of limitations during the pendency of state collateral review. See § 2244(d)(2).' In other words, once petitioner's judgment became 'final' it could not thereafter be 'un-finalized' when the Third Circuit Court of Appeals granted his otherwise timely and meritorious Motion to Correct Illegal Sentence. Clearly, more than one un-tolled year elapsed between the date that petitioner's judgment of conviction became final and the date he filed his federal *habeas corpus* petition." [doc. 2, p. 19]

2

3. Petitioner objected to the Recommendation on October 27, 2006. [doc. 4]

4. Judge Trimble signed a judgment adopting the Magistrate Judge's recommendation and ordering dismissal of the *habeas* petition on November 28, 2006. [doc. 5]

5. On December 11, 2006 petitioner filed an Application for Reconsideration which cited Walker v. Crosby, 341 F.3d 1240 (11th Cir. 2003)[2] and asked the Court to reckon the limitations period as provided in that case and added an additional claim for relief regarding the conduct of the habitual offender proceedings. [doc. 8] Judge Trimble denied the motion and petitioner filed a Notice of Appeal and moved for a Certificate of Appealability (COA) in the District Court. [docs. 10-12] Judge Trimble denied the COA on December 29, 2006. [doc. 15]

6. On October 3, 2007 Judge Clement of the Fifth Circuit granted petitioner's request for COA on one issue and denied it

---

[2] In Walker, the Eleventh Circuit held, "[U]nder [28 U.S.C. §2244(d)(1)(A)] we measure the statute of limitations from the date on which the resentencing judgment became final... Appellant's original conviction became final by the conclusion of direct review on August 7, 1991. Appellant's resentencing judgment, however, did not become final by the conclusion of direct review until June 5, 1998. Appellant was allowed to challenge both of these judgments in a single *habeas* petition under Rule 2(d) of the Rules Governing Section 2254 Cases.[footnote omitted] Since the limitations period in § 2244(d)(1) must run from the 'latest' of the several possible triggering dates provided in its subparagraphs, the limitations period for Appellant's application runs from June 5, 1998, the date upon which Appellant's resentencing judgment became final by the conclusion of direct review, under subparagraph (A)." Walker v. Crosby, 341 F.3d at 1246.

as to another.[3]

7. On October 17, 2007 petitioner filed a petition for
panel rehearing.[4]

8. On November 2, 2007 a three-judge panel of the Fifth
Circuit "... considered appellant's petition for rehearing as a
petition for reconsideration as to the COA issue not allowed by
the court's order of October 3, 2007, only..." and denied
relief. Eugene Henry Moore v. Terry Terrell, Warden, No. 07-
30019 (5th Cir. November 2, 2007) PACER Document 0051304446.

9. Petitioner submitted an appeal brief arguing only one
issue for review, "Did the trial court fail to call upon
appellant to enter a plea of guilty to the habitual offender

---

[3] Judge Clement's order reads as follows: "Moore contends that, because
he was granted an out-of-time appeal of his conviction in connection with his
appeal from a resentencing judgment, the limitation period, with respect to
his claims related to his conviction, began to run at the time the
resenentencing judgment became final. Jurists of reason would not find the
district court's rejection of this contention debatable or wrong. See Slack v.
McDaniel, 529 U.S. 473, 484 (2000). COA is denied as to this issue. Moore
contends that the district court erred in determining that claims related only
to the legality of the resentencing proceeding are time-barred. COA is granted
as to this issue." Eugene Henry Moore v. Terry Terrell, Warden, No. 07-30019
(5th Cir. October 3, 2007. [PACER document 005197306]

[4] Citing Rainey v. Sec'y for the Dep't of Corr., 443 F.3d 1323 (11th
Cir. 2006) petitioner argued, "When a petitioner brings a single petition
challenging his original judgment of conviction and his resentencing judgment,
the statute of limitations under ... AEDPA runs from the date the resentencing
judgment became final..." Petitioner thereafter argued that his judgment of
conviction and sentence became final for AEDPA purposes on November 28, 2005.
Eugene Henry Moore v. Terry Terrell, Warden, No. 07-30019, PACER Document
0051312560.

bill?"[5]

10. In February 2008, while the matter was still pending in the Fifth Circuit, petitioner filed a petition for writ of *certiorari* in the United States Supreme Court. *Certiorari* was denied on May 19, 2008. Eugene Henry Moore v. Terry Terrell, Warden, ___ U.S. ___, 128 S.Ct. 2474, 171 L.Ed.2d 770 (2008); see also No. 07-30019 PACER Document Number 005113040.

11. On November 6, 2009 the Fifth Circuit granted "... COA as to the question of whether the district court erred in dismissing the underlying petition for *habeas* relief as time-barred, and we further vacate and remand the entire case for further proceedings consistent with Jimenez v. Quarterman, 129 S.Ct. 681 (2009)." Eugene Henry Moore v. Terry Terrell, Warden,

---

[5] However, in the Statement of Facts, petitioner alleged, "The district court's judgment upholding the magistrate's report and recommendation on appellant's petition for writ of *habeas corpus* as time-barred with prejudice pursuant to 28 U.S.C. §2244(d) is clearly an error. The record itself belies the district court judgment because appellant's petition is timely filed under Louisiana law and that his conviction and sentence was not final until resolution of his out-of-time appeal by the Louisiana State Supreme Court. The Federal Western District Court is of the opinion that appellant's conviction and sentence became final in 1998 for failure to timely file an appeal after his sentence as a habitual offender. The record in this matter clearly establishes that appellant has been resentenced ... on the 30th day of March 2004 and that his conviction and sentence did not become final until resolution of his out-of-time appeal on the 28th day of November 2005 as to entitle him to the benefit of rules established before the out of time appeal was resolved rendering his conviction and sentence non-final." Eugene Henry Moore v. Terry Terrell, Warden, No. 07-30019, PACER Document Number 005177980.

No. 07-30019 (5th Cir. November 6, 2009) at PACER Document No. 0051957173.

12. On December 11, 2009 Judge Trimble referred the matter to the undersigned for review, report, and recommendation. [doc. 21]

**B. Relevant State Court Proceedings**

Petitioner was charged with distribution of cocaine. Detective Steve Cheramie of the Cameron Parish Sheriff's Office employed Lamar Moreau as an undercover narcotics agent and informant. On April 12, 1996, Cheramie "wired" Moreau with a concealed electronic radio transmitter and listened in on his conversation with the petitioner at a local bar called Sweeney's. Moreau purchased one rock of suspected crack cocaine from the petitioner. The item was ultimately submitted to the Southwest Louisiana Crime Lab where forensic testing confirmed that the substance was indeed cocaine. At the trial, the State called Moreau and Cheramie who testified to the events of April 12, 1996. Other witnesses established the chain of custody of the suspect drug and forensic chemist Chaumont testified that the item purchased from petitioner by Mr. Moreau was indeed crack cocaine. At the conclusion of the trial held on December 9, 1997, petitioner was found guilty as charged. [See SCR, Vol.

6

1, Trial Transcript, pp. 157-237] Petitioner was ultimately charged as a second felony offender; on January 29, 1998, he admitted to the charge, was adjudicated accordingly and sentenced to serve 15 years at hard labor without benefit of parole. [doc. 8-4, pp. 19-26, Transcript]

As noted above, (see fn. 1), Magistrate Judge Wilson provided a comprehensive chronology of the events that occurred following petitioner's conviction, adjudication, and sentencing. Those facts were relevant to the time-bar analysis conducted by the Magistrate Judge. The undersigned has determined that the following facts and pleadings are relevant to the resolution of this matter at this time:

1. On September 22, 2003 petitioner filed a Motion to Correct And [sic] Illegal Sentence. [Vol. 2, pp. 80-97; Vol. 1, Appendix M-a] On October 6, 2003 this Motion was denied. [Vol. 2, pp. 78-79; *id.*]

2. On October 31, 2003 petitioner filed a writ application in the Third Circuit Court of Appeals. [Vol. 1, Appendix M-b]

3. On January 27, 2004 petitioner's writ application was granted as follows:

> The trial court failed to vacate the original twelve year sentence before imposing the fifteen-year habitual offender sentence rendering the habitual

7

offender sentence null and void. See *State v. Walton*, 1998-1433 (La. App. 3 Cir. 3/24/99), 738 So.2d 36, *writ denied*, 1999-1195 (La. 10/1//99), 748 So.2d 434, *State v. Boss*, 03-133 (La. App. 5 Cir. 5/28/03), 848 So.2d 75 and La. R.S.15:529.1. The trial court subsequently vacated the original sentence but did not impose a new habitual offender sentence. Accordingly, this matter is remanded to the trial court for re-sentencing Relator as a second felony offender. *State v. Moore*, KH 03-01511 (La. App. 1/27/2004) [Vol. 3, p. 132; Vol. 2, p. 98]

4. On March 25, 2004 a hearing was convened. The trial court vacated all previous sentences and then fixed a sentencing date in accordance with Louisiana law. [Vol. 4, pp. 274-280; Vol. 2, p. 4; pp. 145-151] Petitioner returned to court on March 30, 2004 and was sentenced to serve 15 years on the habitual offender adjudication. Petitioner filed a Motion to Reconsider alleging excessiveness of sentence; he also filed a motion to quash the Habitual Offender Bill. Both motions were denied. Petitioner advised the court of his intention to appeal and the judge set a return date. [Vol. 4, pp. 281-287; Vol. 2, pp. 5-6; pp. 152-158]

5. Petitioner's March 30, 2004 Motion to Reconsider sentence noted the following facts,

On February 1, 2001, Movant's original sentence was vacated and set aside, the trial court failed to impose the Habitual Offender Sentence. Movant applied for Correction of and Illegal Sentence on or about September 17, 2003 before this Honorable Court and was

denied under the Post-Conviction Statute on October 6, 2003. Movant then applied for Supervisory Writ of Review in and for the Third Circuit Court of Appeal, the Circuit Court granted Applicant's writ and made Peremptory Order on January 27, 2004 remanding this matter to the trial court for re-sentencing Movant as an Habitual Offender.  [Vol. 3, pp. 136-140; Vol. 2, pp. 102-106]

His Motion to Quash alleged an unreasonable delay prior to the imposition of sentence. [Vol. 2, pp. 107-111]

5. On the same date – March 30, 2004 – petitioner filed a Notice of Intent to Appeal/Seek Supervisory Writs again seeking reinstatement of his appeal rights and raising the following assignments of error, (1) insufficiency of evidence which was obtained in an illegal manner; (2) denial of due process and fair trial due to suggestive identification procedures; (3) excessiveness of sentence; and (4) denial of an appeal. [Vol. 3, pp. 141-144; Vol. 2, pp. 112-115]

6. On April 22, 2004 petitioner moved for appointment of counsel; his motion was granted and an attorney from the Louisiana Appellate Project was appointed to represent him on appeal. [Vol. 3, pp. 146-147; 150; Vol. 2, pp. 122-129]

7. On or about July 2, 2004, petitioner's court-appointed

9

appellate attorney filed an <u>Anders</u> brief[6] in the Third Circuit Court of Appeals. [Vol. 1, Appendix M-e] Counsel asserted that she could find "...no non-frivolous errors subject to be reviewed on an appeal..." and requested permission to withdraw.

Petitioner filed a *pro se* appeal brief arguing the following assignments of error - (a) insufficiency of the evidence based on prosecution's failure to prove that the substance in question was cocaine; (b) the trial court erred by allowing a lay witness to testify as an expert; (c) the state failed to prove credibility and reliability of confidential informant; (d) the trial court erred when it denied petitioner's motion to compel production of the audio tape of the habitual offender hearing which would establish that petitioner did not admit to the charge, but rather admitted that he "understood the charge;" (e) illegal habitual offender sentence because trial court failed to articulate which of two prior convictions was being used as the predicate offense; and, (f) the trial court erred in denying motion to quash based upon the unreasonable

---

[6] See <u>Anders v. California</u>, 386 U.S. 738, 87 S.Ct. 1396 , 18 L.Ed.2d 493 (1967)(When appointed appellate counsel has determined that no non-frivolous issues and no ruling arguably supporting an appeal were found after a conscientious review of the record, he may file a brief establishing those facts and requesting permission of the court to withdraw from the case.)

delays. [Vol. 1, Appendix M-h] Petitioner also filed a Reply

Brief. [Vol. 1, Appendix M-k]

8. On December 8, 2004, the Third Circuit affirmed

petitioner's distribution of cocaine conviction and his

adjudication as a multiple offender[7] but vacated the sentence

---

[7] (a) Assignment of Error No. 1 (sufficiency of the evidence)- The
Court, citing State v. Goldston, 35,271 (La. App. 2 Cir. 12/5/01, 804 So.2d
141 and State v. LeBlanc, 618 So.2d 949 (La. App. 1 Cir. 1993), writ denied,
95-2216 (La. 10/4/96), 679 So.2d 1372, noted, "The State correctly points out
that the Defense made no objections to Mr. Chaumont's 'qualifications,
methods, or conclusions.' Thus, the evidence was properly admitted for lack of
a contemporaneous objection. Furthermore, Mr. Chaumont's testimony was
sufficient to prove the substance tested was cocaine and that, even if, Mr.
Chaumont's testimony was inadmissible, it may still be considered in assessing
whether the evidence the State presented was sufficient to prove the offense."
See State v. Moore, KA 04-822 and KA 04-823 (La. App. 3 Cir.
12/8/2004)(unpublished) at Vol. 1, Appendix M-1, pp. 5-6.

(b) Assignment of Error No. 2 - (Lay Witness Testimony) - The Court,
after reviewing the testimony of Detective Cheramie made the following finding
of fact, "Contrary to Moore's assertions, Detective Cheramie was not allowed
to testify as a voice analysis expert. The foregoing testimony made it clear
that Cheramie's knowledge of the seller's identity was based on information
obtained from Mr. Moreau, not on voice analysis." See State v. Moore, KA 04-
822 and KA 04-823 (La. App. 3 Cir. 12/8/2004)(unpublished) at Vol. 1, Appendix
M-1, pp. 6-7.

(c) Assignment of Error No. 3 - (Confidential Informant) - In rejecting
this Assignment, the Third Circuit observed, "However, this is not a situation
where a confidential informant simply provided information which was used as a
basis for arrest. Informant Moreau contacted Detective Cheramie and
participated in a controlled buy of cocaine from the Defendant. Moreau
testified at trial and was subject to Defense's cross-examination. His
credibility was an issue for the jury to resolve. By convicting Mr. Moore,
they obviously resolved the determination in the prosecution's favor.
Moreover, contrary to Mr. Moore's allegations, the State did, in fact, present
the audiotape of the transaction at trial and played it for the jury." See
State v. Moore, KA 04-822 and KA 04-823 (La. App. 3 Cir. 12/8/2004)
(unpublished) at Vol. 1, Appendix M-1, p. 7.

(d) Assignment of Error No. 4 - (Audio Recording of the Habitual
Offender Hearing) - In rejecting this Assignment, the Court observed,
"Mr. Moore claims he discovered in the transcript of his habitual offender

hearing that he admitted to the charged contained in the habitual offender
bill when, in fact, he only admitted he understood the habitual offender law;
thus, the transcript contains discrepancies which render it defective. He
urges that the trial court abused its discretion in denying his Motion and
Order to Compel Production of Audio Record of the Habitual Offender Hearing...
Moore filed his Motion and Order to Compel Production ... in the trial court,
and the trial court denied it without a hearing. Moore sought review of this
ruling in this court in State v. Moore [03-71 (La. App. 3 Cir.
7/29/03)(unpublished)]. This court denied relief, finding no error in the
trial court's ruling. Moore has not sought further relief in the lower court
on this issue. Thus, this court is presented with the same issue it has
previously considered and on which it has ruled. Moore may not relitigate an
issue which we have already considered.  As for his claim that a contradictory
hearing should have been held, a claim which was not previously raised in his
writ application, we note that a contradictory hearing is not required prior
to the initial ruling on a request for public records of this nature. [La.
R.S. 44:1, et seq.] Accordingly, we deny this assignment of error." See State
v. Moore, KA 04-822 and KA 04-823 (La. App. 3 Cir. 12/8/2004)(unpublished) at
Vol. 1, Appendix M-1, pp. 7-8.

     (e) Assignment of Error No. 5 - (Predicate for Habitual Offender Status)
- The Court rejected this claim as follows, "Moore asserts the trial court
erred in failing to specify which of the two felony convictions it used as a
predicate for his habitual offender status, rendering his sentence illegal...
His reference to the minimum five year sentence indicates that he is under the
mistaken impression that La. R.S.15:529.1(A)(1)(b)(ii) or (c) (ii) applies to
his case. These provisions require life imprisonment for third or fourth
offenders convicted of certain crimes including drug offenses punishable by
more than five years imprisonment.  He cites State v. Johnson [citation
omitted] in support of this claim. However, Johnson is inapplicable because
it, too, dealt with the 'violent offender' provision of La. R.S.15:529.1,
under which it is necessary to know which predicate offenses were relied upon.
However, Mr. Moore was adjudicated a second felony offender, and there is no
such provision for that classification of offender." See State v. Moore, KA
04-822 and KA 04-823 (La. App. 3 Cir. 12/8/2004)(unpublished) at Vol. 1,
Appendix M-1, pp. 8-9.

     (f) Assignment of Error No. 6 - (Unreasonable Sentencing Delay) -
     In rejecting this claim, the Court noted, "In September of 2003,
[petitioner] filed a pro se Motion to Correct Illegal Sentence in the lower
court, raising the claim in which, on review, this court concluded that this
fifteen-year habitual offender sentence was null and void. As we stated
previously, this court's order of January 27, 2004 ordered the lower court to
resentence him. Within approximately two months of our ruling, it complied.
Although thirty-eight months lapsed between the vacating of the original
sentencing and the resentencing, it was not due to any inordinate delays or
bad faith on the State's part. It also does not appear to be due to the
Defendant's fault. Apparently, no one was aware of the illegality before it
was raised in the September 3 pro se motion. Furthermore, even if Moore were

imposed on March 30, 2004 and remanded for resentencing. As to this latter error, the court, having conducted an Errors Patent review, noted that petitioner was not represented by counsel at the March 30, 2004 sentencing, nor was he advised of the period of limitations for seeking post-conviction relief. [See State v. Moore, KA 04-822 and KA 04-823 (La. App. 3 Cir. 12/8/2004) (unpublished) at Vol. 1, Appendix M-l, pp. 2-3]

Petitioner's application for re-hearing was denied on January 26, 2005. [Vol. 1, Appendix M-m] [See also State of Louisiana v. Eugene H. Moore, 2004-00822 (La. App. 3 Cir. 12/8/2004), 892 So.2d 181(Table).

9. On February 25, 2005 petitioner filed an application for writs in the Louisiana Supreme Court. On November 28, 2005, the Supreme Court denied writs. State v. Moore, No. 2005-KO-0804 (La. 11/28/2005). [Vol. 1., Appendix M-n] See also State of Louisiana v. Eugene H. Moore, 2005-0804 (La. 11/28/2005), 916 So.2d 143.

10. On March 10, 2005 petitioner was returned to district

---

eligible for early release, [State v. Muhammad, 03-2991 (La. 5/25/04), 875 So.2d 45] held that, even, the completion of the sentence for the underlying offenses does not preclude the State from proceeding with habitual offender proceedings." See State v. Moore, KA 04-822 and KA 04-823 (La. App. 3 Cir. 12/8/2004)(unpublished) at Vol. 1, Appendix M-l, p. 13.

court for resentencing in accordance with the Third Circuit's

mandate. Petitioner was represented by counsel and advised of

the delays for seeking post-conviction relief. Petitioner's

attempt to file a motion to quash the habitual offender

adjudication was rejected by the trial court[8] and petitioner was

---

[8] See Transcript of Re-Sentencing, March 10, 2005 at doc. 8-4, pp. 38-
At the hearing, petitioner advised his court-appointed attorney of his desire
to file a motion to quash. However, the motion was not filed in the court
record; instead, it had been directly submitted to the judge. The judge noted,
"There's a Motion to Quash... which the Court has received directly. And as
you know, when I receive those the Court studies them to see whether or not a
response should be made with the District Attorney's office. And it's only
been received less than a week. So, it's still under review. It's not before
the Court at this time... Although it's called a Motion to Quash, it's in the
nature of post-conviction relief." [Doc. 8-4, p. 40] The following colloquy
occurred:

 Court: ... So, the Court's going to vacate the previous sentence of 12 years-
well, I'll vacate the multiple offender sentence and reimpose it at 15 years.

Now, that I see Mr. Moore is represented by counsel, does counsel have any
objection to that?

Petitioner: I'd like to appeal that. I got a motion in order to appeal...
Because of the motion to squash [sic] that I had filed. It's base on -

Court: You want to register an objection?

Petitioner: Yes, sir ... To appeal.

Court: ... that sentence? And I suppose you want to give me notice of appeal
is what you're saying.

Petitioner: Yes, sir.

                              *    *    *

Prosecutor: I think that - I'm not sure, Your Honor, but that there might be a
time delay between - that's the denial of a motion, but I would request that
the record reflect that he waived any time ...

Court: Well, I haven't denied any motion this morning... I've just re-
sentenced, just reimposed a sentence with benefit of counsel to follow the
instructions from the Court of Appeal.

Petitioner: Can I get that motion for you, Your Honor?

Counsel for Petitioner: I'll get it for the Court.

sentenced to serve 15 years; he objected to this sentence and filed a motion for appeal. The Louisiana Appellate Project was appointed to represent him on appeal. [Vol. 1, Appendix M-p]

11. Counsel again filed an <u>Anders</u> Brief and was permitted to withdraw. Petitioner filed a Supplemental Brief on Appeal arguing errors in the Habitual Offender proceedings - namely, that he was not represented by counsel at those proceedings, the State failed to establish that he was represented by counsel when he was convicted of the predicate offenses, and, that petitioner did not in fact admit to being a second felony offender. [See doc. 6, Manual Attachment, Supplemental Brief]

12. On February 1, 2006 petitioner's sentence was affirmed by the Third Circuit Court of Appeals in an unpublished opinion. <u>State of Louisiana v. Eugene Henry Moore</u>, 2005-00736 (La. 2/1/2006), 924 So.2d 516 (Table)[see also Slip Opinion at doc. 8-2, pp. 1-6][9]

_____

Whereupon the proceedings were concluded. [doc. 1-4, pp. 41-43]

[9] In affirming the sentence, the Third Circuit noted, "In Defendant's pro se assignments of error, he challenges the trial court's ruling on the motion to quash the habitual offender bill that he filed prior to the resentencing at issue herein. He further challenges the constitutionality of his 'plea' to the habitual offender bill and the validity of his predicate offenses. <u>Procedurally, these issues are not properly before this court as they do not concern Defendant's resentencing, which is the only matter before us in this appeal.</u> See <u>State v. Guzman</u>, 520 So.2d 1099 (La. App. 3 Cir. 1987), <i>writ denied</i>, 521 So.2d 1183 (La. 1988). <u>Defendant's conviction was affirmed in his original appeal, and this court found no merit in his claim that the trial</u>

13. Petitioner's writ application [doc. 8-1, pp. 3-15] (post-marked February 28, 2006) argued a single claim – "... that the habitual offender adjudication does not rest upon a valid and sufficient plea of guilty rendering the habitual offender adjudication constitution[ally] infirm..." [doc. 8-1, p. 14] This writ application was denied without comment on November 17, 2006. State of Louisiana v. Eugene Henry Moore, 2006-1166 (La. 11/17/06), 942 So.2d 531.

**3. Claims Presented**

Petitioner filed his federal *habeas corpus* petition on August 4, 2006.  He raised four claims for relief –

(1) insufficient evidence to establish that the alleged evidence was in fact cocaine [doc. 1-2, p. 4];

(2) trial court erred in allowing Detective Stephen Cheramie to give opinion testimony concerning the identity of speakers on an audio tape and otherwise [doc. 1-2, p. 9];

(3) the trial court erred when it permitted the jury to judge the credibility or reliability of the undercover police informant identified as "Agent #39 Lamar Moreau" [doc. 1-2, p. 16]; and,

---

court failed to specify which of two prior felony convictions it used as a predicate for his habitual offender status. This court vacated Defendant's sentence because he was not represented by counsel, and the case was remanded for resentencing only. Accordingly, we do not consider Defendant's pro se assignment of errors." State of Louisiana v. Eugene Henry Moore, 2005-00736 (La. 2/1/2006), 924 So.2d 516 (Table)[see also Slip Opinion at doc. 8-2, pp. 1-6](Emphasis Supplied)

16

(4) an unreasonable delay in re-sentencing [doc. 1-2, p. 22]

In the pleading filed on December 11, 2006, petitioner argued an additional claim, Claim 5, as follows:

(5) The Trial Court failed to call upon him to tender a plea of guilty to the Habitual Offender Bill. [doc. 8, p. 7]

### Law and Analysis

Petitioner has provided all of the relevant State court documents, including the various pleadings, memoranda, rulings, judgments, and transcripts. [See doc 1-3, Manual Attachments; doc. 6-2, Manual Attachments; doc. 8-1, 8-2, 8-3, and 8-4; doc. 19] The complete state court record [SCR], including the trial transcript has been made available.

Based on the evidence, it appears that since petitioner was granted an out-of-time appeal, his federal writ of *habeas corpus* was filed within the limitations period established by 28 U.S.C. §2244(d) as interpreted by the Supreme Court in <u>Jimenez v. Quarterman</u>, 129 S.Ct. 681 (2009).

Nevertheless, it is clear from the record before the court that petitioner is not entitled to *habeas* relief. The claims presented herein were presented to the Third Circuit Court of Appeals in petitioner's out-of-time appeal and thereafter to the

17

Louisiana Supreme Court. The complete record establishes that
Claims One (sufficiency of the evidence) and Five (habitual
offender claims)were rejected as procedurally defaulted and
Claims Two, Three, and Four were adjudicated on the merits by
the Third Circuit Court of Appeals. As is shown below, each
claim has been analyzed and found to be either procedurally
defaulted or without merit.

**Claim One - Insufficient Evidence to establish that the
substance possessed was cocaine.**

Petitioner argued this claim as Assignment of Error Number
One in his out-of-time appeal [See *Pro Se* Appeals Brief, Vol. 1,
Appendix M-h] and thereafter as Claim One in his application for
writs in the Louisiana Supreme Court on direct review. [Writ
Application, Vol. 1, Appendix M-n]

In denying relief on this claim, the Third Circuit cited
State v. Goldston, 35,271 (La. App. 2 Cir. 12/5/01), 804 So.2d
141[10] and State v. LeBlanc, 618 So.2d 949 (La. App. 1 Cir. 1993),

---

[10] In Goldston, the defendant objected to the testimony of an expert
witness on the grounds that he gave an opinion as to the ultimate issue. He
did not, however, object to the expert's qualifications. The Court held, "It
is well-settled that defense counsel must state the basis for an objection
when it is made, pointing out the specific error to the trial court. The
grounds for objection must be sufficiently brought to the court's attention to
allow it the opportunity to make the proper ruling and prevent or cure any
error. See LSA-C.E. art. 103 A(1); LSA-C.Cr.P. art. 841; State v. Trahan,
93-1116 (La.App. 1st Cir.5/20/94), 637 So.2d 694. When a defendant fails to
object to an issue at trial, he is precluded from urging the issue on appeal.
See State v. Leblanc, 618 So.2d 949, 958-59 (La.App. 1st Cir.1993)... In the

writ denied, 95-2216 (La. 10/4/96), 679 So.2d 1372, [11] and

concluded,

> The State correctly points out that <u>the Defense made
> no objections to Mr. Chaumont's 'qualifications,
> methods, or conclusions.' Thus, the evidence was
> properly admitted for lack of a contemporaneous
> objection</u>. Furthermore, Mr. Chaumont's testimony was
> sufficient to prove the substance tested was cocaine
> and that, even if, Mr. Chaumont's testimony was
> inadmissible, it may still be considered in assessing
> whether the evidence the State presented was
> sufficient to prove the offense. See <u>State v. Moore</u>,
> KA 04-822 and KA 04-823 (La. App. 3 Cir.
> 12/8/2004)(unpublished) at Vol. 1, Appendix M-1, pp.
> 5-6.

The procedural default doctrine bars federal *habeas corpus*

---

instant case, although the defendant objected to the Lieutenant's testimony because it would relate to an ultimate issue to be determined by the jury, he never contested Lieutenant Via's qualifications. Thus, he is barred from raising this issue on appeal. LSA-C.Cr.P. art. 841; State v. Trahan, supra. See <u>State v. Leblanc</u>, *supra*. Therefore, this court need not discuss the trial court's alleged non-compliance with the standards for admission of scientific evidence..." <u>State v. Goldston</u>, 804 So.2d at 157-58.

[11] In <u>LeBlanc</u> (cited with approval in <u>Goldston</u>, *supra*), the defendant argued that the state failed to qualify its expert witness. The First Circuit refused to address the issue because the defendant failed to object at trial. The Court noted, "In his brief to this court, the defendant further argues that the state failed to qualify the witness as an expert in the field of narcotics investigations and, thus, the witness was unable to offer his opinion as to the street value of the cocaine. However, the defendant did not object to the state's failure to qualify the witness as an expert or the witness's ability to give his opinion. The defendant only objected to the relevancy of the question posed by the state.

It is well-settled that defense counsel must state the basis for an objection when it is made, pointing out the specific error to the trial court. The grounds for objection must be sufficiently brought to the attention of the trial court to allow it the opportunity to make the proper ruling and prevent or cure any error. La.C.E. art. 103(A)(1); La.C.Cr.P. art. 841. <u>State v. Daughtery</u>, 563 So.2d 1171, 1178 (La.App. 1st Cir.), writ denied, 569 So.2d 980 (La.1990). Because the defendant failed to object to this issue at trial, it cannot now be urged on appeal." <u>State v. LeBlanc</u>, 618 So.2d at 958-59.

review when a state court declines to address a petitioner's federal claims because the petitioner has failed to follow a state procedural rule. Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553-54, 115 L.Ed.2d 640 (1991). "[I]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal *habeas* review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750-51. This doctrine ensures that federal courts give proper respect to state procedural rules. *Id.*

Furthermore, the doctrine presumes that a state court's express reliance on a procedural bar functions as an independent and adequate ground in support of the judgment. Sones v. Hargett, 61 F.3d 410, 416 (5th Cir.1996). However, a petitioner can rebut this presumption by establishing that the procedural rule is not strictly or regularly followed. Moore v. Roberts, 83 F.3d 699 (5th Cir.1996). The burden is on the petitioner to show that a state did not strictly and regularly follow the procedural bar at the time pertinent to his state court action. Stokes v. Anderson, 123 F.3d 840, 843 (5th Cir.1999); Amos v. Scott, 61 F.3d 333, 342, (5th Cir.1995); Sones, 61 F.3d at 416. In bearing the

20

burden, the petitioner must demonstrate that the state failed to apply the procedural bar to claims which are identical or similar to the claims raised by him. Stokes, 123 F.3d at 860; Amos, 61 F.3d at 340.

As shown above, the Third Circuit, implicitly relied on La. C.Cr.P. art. 841 and refused to reach the merits of Claim One because petitioner failed to contemporaneously object to the alleged error at trial. La. C.Cr.P. art 841, Louisiana's contemporaneous objection rule, prohibits appellate review of errors which were not objected to at trial. Louisiana Courts (see Goldston, *supra*, and LeBlanc, *supra*, and the cases cited therein) have consistently applied art. 841 to bar appellate review of evidentiary errors which were not objected to at trial. Further, the United States Supreme Court has determined that the violation of a state's contemporaneous objection rule provides sufficient grounds to support dismissal of a subsequent federal *habeas* petition as procedurally defaulted. Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1984).

Although the Third Circuit seemingly addressed the merits of this claim after noting the procedural default, "[t]he rule in this circuit is that, when a state court bases its decision upon the alternative grounds of procedural default and a rejection of the merits, a federal court must, in the absence of good 'cause' and 'prejudice,' deny *habeas* relief because of the procedural

21

default." Cook v. Lynaugh, 821 F.2d 1072, 1077 (5th Cir.1987);
Hughes v. Dretke, 412 F.3d 582, 592 -593 (5th Cir.2005).  Since
the Third Circuit's opinion  was the last reasoned opinion of the
state courts addressing petitioner's jury charge claim, and,
since  that court specifically identified and invoked the
procedural default, the Louisiana Supreme Court's subsequent
one-word writ denial is presumed to have been based upon the same
procedural default identified by the Court of Appeals. See Ylst
v. Nunnemaker, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706
(1991) (Where there has been a reasoned state court judgment
which explicitly rejects the federal claim on state procedural
grounds, subsequent unexplained judgments upholding the previous
judgment or rejecting the claim are presumed to rely upon the
same ground.)

     Since it is apparent that the courts of Louisiana regularly
invoke the procedural default codified in La.C.Cr.P. art. 841,
federal *habeas corpus* review of this claim is prohibited by the
procedural default doctrine.

### a. *Cause and Prejudice or Miscarriage of Justice*

     Federal *habeas* review of this procedurally defaulted claim
is barred "...unless the prisoner can demonstrate cause for the
default and actual prejudice as result of the alleged violation
of federal law, or demonstrate that failure to consider the
claims will result in a fundamental miscarriage of justice."

Coleman v. Thompson, 501 U.S. 722, 750-51, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

Petitioner has provided no evidence or argument to establish cause and prejudice or a miscarriage of justice. Nevertheless, the undersigned has conducted a review of the pleadings and exhibits, and with respect to these issues and notes the following:

### A. Cause

In Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), the Supreme Court explained that "cause" in the context of a procedural default refers to an impediment external to the defense: "[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under this standard." Murray v. Carrier, 477 U.S. at 488, 106 S.Ct. at 2645 (internal citations omitted).

### 1. Ineffective Assistance of Counsel

Petitioner may argue that the cause of his default of the expert witness claim was his attorney's ineffective assistance – counsel's failure to object to the testimony of Mr. Chaumont and thus preserve the issue for review.

Counsel's ineffectiveness may suffice as "cause" but only if that ineffectiveness has been properly presented to, and exhausted in, the Louisiana courts as a separate and distinct claim for relief. In other words, if petitioner intends to rely on the alleged ineffective assistance of trial counsel as cause for a procedural default, he must have first independently raised and exhausted that claim in the Louisiana courts. See Edwards v. Carpenter, 529 U.S. 446, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000); Stewart v. LaGrand, 526 U.S. 115, 120, 119 S.Ct. 1018, 143 L.Ed.2d 196 (1999); Carrier, 477 U.S. at 489. This, was not done in petitioner's case. Therefore, petitioner cannot rely on ineffective assistance of trial counsel as cause for his default. If a *habeas* petitioner fails to demonstrate cause, the court need not consider whether there is actual prejudice. Saahir v. Collins, 956 F.2d 115, 118 (5th Cir.1992).

### B. Prejudice

Nevertheless, a discussion of prejudice in this context is appropriate. According to the jurisprudence, "[i]n addition to cause, [a procedurally defaulted *habeas* petitioner] must show actual prejudice to overcome the procedural bar." United States

24

v. Guerra, 94 F.3d 989, 994 (5th Cir.1996) (internal quotations omitted). "The movant makes this showing where he demonstrates that, but for the error, he might not have been convicted." *Id.* (emphasis supplied); see also Pickney v. Cain, 337 F.3d 542, 545 (5th Cir.2003). Actual prejudice requires a showing that, based on the success of the underlying defaulted claim, the result of the proceeding would somehow have been different. Barrientes v. Johnson, 221 F.3d 741, 769 (5th Cir.2000).

Even if petitioner were to establish cause for his default, he cannot establish prejudice. The petitioner argues that the State failed to properly tender Mr. Chaumont as an expert witness. However, this circumstance appears to have been the result of inadvertence. Had petitioner or his attorney timely objected to Chaumont's testimony on that basis, the State would have easily cured this deficiency simply by tendering the witness as an expert. The trial transcript reveals that Chaumont had the necessary training, education and experience to qualify as an expert forensic chemist. Chaumont testified that he possessed a Bachelor Degree in Science and Chemistry and a Masters Degree in Organic Chemistry from McNeese State University and that he taught at the college level for 30 years and had been doing drug analysis at the Southwest Louisiana Crime Lab for 12 years. [SCR, Vol. 1, Trial Transcript, p. 167]

In other words, even if he could establish cause, petitioner

25

is clearly unable to establish prejudice.

## C. *Miscarriage of Justice*

Since petitioner has thus far failed to show "cause and prejudice" for his default, federal review of the defaulted claim may therefore be had only if necessary to avoid a fundamental miscarriage of justice. Coleman, 501 U.S. at 750, 111 S.Ct. 2546

In order for a *habeas corpus* petitioner to avoid a procedural default by showing a fundamental miscarriage of justice, the petitioner must assert his actual innocence by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986); Glover v. Cain, 128 F.3d 900, 904 (5th Cir. 1997). To support such an exception, the petitioner must allege that as a factual matter he did not commit the crime. Corwin v. Johnson, 150 F.3d 467, 473 (5 Cir.1998); Ward v. Cain, 53 F.3d 106, 108 (5th Cir.1995). Thus, the petitioner must make a "colorable showing of factual innocence." Callins v. Johnson, 89 F.3d 210, 213 (5th Cir.), *cert. denied*, 519 U.S. 1017, 117 S.Ct. 530, 136 L.Ed.2d 416 (1996) quoting McClesky v. Zant, 499 U.S. 467, 495, 114 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1993).

Petitioner has never alleged, nor does the record suggest that he is factually innocent of the crime. Thus, petitioner has not shown that he will suffer a fundamental miscarriage of

26

justice from this court's failure to consider this *habeas corpus* claim. Accordingly, petitioner cannot avoid procedural default of Claim One on the grounds of actual innocence.[12]

### Claim Two (Court erred when it allowed Cheramie to give opinion testimony),

### Claim Three (Court erred when it permitted the jury to judge the credibility of the undercover police informant) and

### Claim Four (Unreasonable delay in resentencing)

Petitioner raised claims Two, Three, and Four as Assignments of Error 2, 3, and 6 in his out-of-time appeal to the Third Circuit. He also presented these claims to the Louisiana Supreme Court in his application for writs seeking review of the judgment of the Third Circuit which affirmed his conviction in his out-of-time appeal. The Third Circuit addressed the merits of each claim, therefore this Court must utilize the Standards for Review as set forth in 28 U.S.C. § 2254(d)(1) and (2).

This petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA),

---

[12] Of course, petitioner may again object to this Report and Recommendation. In the event that he does object, he is encouraged to provide argument and evidence of "cause and prejudice" and "miscarriage of justice." Additionally, he is also encouraged to submit argument and evidence to establish that the procedural default identified above was inappropriately identified or applied.

therefore federal *habeas corpus* review is governed by the
provisions of the AEDPA, specifically 28 U.S.C. § 2254(d)(1) and
(2) which define the standard for review.

Under the AEDPA, *habeas* relief is not available to a state
prisoner on a claim which was adjudicated on the merits in State
court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of
> the evidence presented in the State court proceeding.

28 U.S.C. §§ 2254(d)(1) and (2).

Questions of law and mixed questions of law and fact are
reviewed under § 2254(d)(1), while pure questions of fact are
reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485
(5th Cir.2000), *cert. denied*, 532 U.S. 1039, 121 S.Ct. 2001, 149
L.Ed.2d 1004 (2001). The state court's decision is contrary to
federal law within the meaning of § 2254(d)(1) if the state
court applies a rule contradicting the governing law set forth
in the Supreme Court's cases, or the state court "confronts a
set of facts that are materially indistinguishable from a
decision of [the Supreme] Court and nevertheless arrives at a

result different from [Supreme Court] precedent." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's factual findings constitute "an unreasonable application of clearly established" Supreme Court precedent if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. The inquiry into the issue of "unreasonableness" is objective. *Id.* at 409-10. A state court's <u>incorrect</u> application of clearly established Supreme Court precedent is not enough to warrant federal *habeas* relief – the application must also be <u>unreasonable</u>. *Id.* at 410-12 (emphasis supplied).

The state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1). In order to obtain *habeas* relief on the ground that the state court's decision was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the petitioner must rebut by clear and convincing evidence the presumption that the state court's factual findings are correct. See <u>Dowthitt v. Johnson</u>, 230 F.3d 733, 741 (5th Cir.2000).

"[U]nder the deferential standard of AEDPA, [federal courts] review only the state court's decision, not its

reasoning or written opinion, to determine whether *it is*
contrary to or a misapplication of clearly established federal
law." <u>Catalan v. Cockrell</u>, 315 F .3d 491, 493 (5th Cir.2002),
citing  <u>Neal v. Puckett</u>, 286 F.3d 230, 246 (5th Cir.2002)(*en
banc*).

Each of these three claims have been separately analyzed
under these standards:


**Claim Two – Court erred when it allowed Det. Cheramie to provide expert testimony.**

Petitioner raised this claim as Assignment of Error No. 2
in his out-of-time appeal and thereafter in his writ application
before the Supreme Court.

The Third Circuit Court of Appeals addressed the merits of
this claim and rejected it as factually incorrect. In arriving
at this conclusion, the Third Circuit noted the following
testimony by Detective Cheramie on direct examination:

> He [confidential informant Moreau] went into Sweeney's
> and, you know, would tell you how it went afterwards,
> because when it's going on, when I'm listening to the
> transaction, all I've got is the ... receiver, which
> I'm recording, to determine when the buy will be, to
> see if he's leading me to people to try to determine
> any voices or recognize any voices. <u>So, I'm there
> taping it, and then I heard something about – well, I
> think the first time I recognized that he made a buy,
> I think he went to the bathroom and he told me in the</u>

wire the buy was made, or something similar to that.
So, I knew that a buy was made, but he had to go back
and give him the money. It was later that I found out
that he told me that it was Eugene Moore that had sold
him the rock cocaine at Sweeney's.

State v. Moore, KA 04-822 and KA 04-823 (La. App. 3
Cir. 12/8/2004)(unpublished) at Vol. 1, Appendix M-1,
pp. 6-7, quoting from SCR Vol. 1, Trial Transcript p.
198]

Based upon that testimony, the Court then concluded:

Contrary to Moore's assertions, Detective Cheramie was
not allowed to testify as a voice analysis expert. The
foregoing testimony made it clear that Cheramie's
knowledge of the seller's identity was based on
information obtained from Mr. Moreau, not on voice
analysis. See State v. Moore, KA 04-822 and KA 04-823
(La. App. 3 Cir. 12/8/2004)(unpublished) at Vol. 1,
Appendix M-1, pp. 6-7.

Petitioner, however, contends that later testimony by

Detective Cheramie was impermissible "voice analysis" opinion

testimony.

The trial transcript reveals that at the conclusion of

direct examination, an audio tape of the undercover operation

was played for the jury. Prior to playing the tape, Cheramie was

asked to describe the quality of the recording and he replied,

"It's fair, but the Sweeney's part, given the music, as far as

personal voices, it's hard to decipher, but if you listen

closely, I can point out the places where it matters." Cheramie

then went on to explain that the quality was affected by "Engine noises, background noises, microwave towers. It's not like you see on TV. It's not crystal clear. You have problems sometimes." [SCR, Trial Transcript, Vol. 1 at p. 204]

The complained of comment occurred during cross-examination. During that cross examination, the following exchange took place.

> Q. Is it fair to say that what the jury was hearing on that tape was the same thing that you were hearing whenever you were listening from the transmitter?
>
> A. Yes, sir.
>
> Q. So, what they could hear and what you could hear?
>
> A. Yes, sir.
>
> Q. Which probably wasn't really a lot, was it?
>
> A. Not much. [SCR, Vol. 1, Trial Transcript, p. 209]

Then, later on in the cross-examination, petitioner's attorney and Detective Cheramie engaged in the following colloquy concerning Cheramie's Offense Report:

> Q. In this report, it says, 'Agent 39 arrived at Sweeney's at approximately 23:15. Agent 39 met with Eugene with Eugene who was playing pool at the pool table. Agent 39 asked Eugene if he was ready to rock and roll. Eugene told Agent 39 to wait about 30 minutes.' Could you hear any of that on that tape?
>
> A. That particular part, no, I didn't hear.

Q. So, all of that, and you're just going by –
actually it's Agent 35 and not 39 ... which is Mr.
Moreau. You're just going by what Mr. Moreau told you?

A. Correct.

Q. So, the only thing, as far as you're concerned, the
only thing that you could hear at all regarding Eugene
Moore was 'It's in the ball rack?'

A. On that tape and what Eugene [sic] told me in the
bathroom, and yeah, afterwards, correct.

Q. Would Eugene have told you or what Mr. Moreau told
you from the bathroom?

A. What Moreau told me about Eugene.

                    *            *            *

Q. Now, then what he's telling you is that. Let me go
back. [Reading from Detective Cheramie's Report]
'Agent 39 said Eugene pointed to the area of the pool
table where the balls gather to rack up, and there was
a piece of rocky substance. Agent 39 picked up the
rock, and Eugene told him it would be $40.' Could you
hear that on the tape?

A. No, sir.

Q. So, that's just, once again, going by what Mr.
Moreau told you again, right?

A. Correct.

Q. [Again reading from the Report] 'Agent 39 gave the
money to Eugene, and Eugene told him he would be back
mor more.' Now, it doesn't say anything about him
going into the bathroom. Did he tell you at the time
that he went into the bathroom?

A. No. I heard that on the tape. I'm reflecting at
this point what he tells me after we make our case,

that I record him, what he remembers happened.

Q. I'm going to go back up in here a little bit. This is, I guess, at the beginning, [Reading Report] 'Eugene told Agent 39 to wait about 30 minutes. Agent 39 said that he danced and played video poker for a while and then met back with Eugene at the pool table.' Is that - he told you he danced?

A. That's what he told me.

*            *            *

Q. So, the only problem that you heard during this entire time, the only thing that you heard was the part about 'It's in the ball rack,' and then supposedly whenever he's in the bathroom? That's all you could understand on the tape?

A. Yes, sir.

Q. So, everything else - I mean, you were strictly relying on what your confidential informant told you?

A. Yes, sir.

Q. Not on anything that you saw or that you heard; you're just going by what your informant told you?

A. Yes, sir, and by Eugene's voice when he's telling him to look in the balls.

Q. That's all he's saying is it's in the ball rack?

A. Correct. [SCR, Vol 1, Transcript, p. 217- 220]

Clearly, petitioner has taken the remark out of context.

Further, as shown above, it was petitioner's attorney who first

addressed the statement about the "ball rack" when he asked,

34

"So, the only thing, as far as you're concerned, the only thing

that you could hear at all regarding Eugene Moore was 'It's in

the ball rack?'"        The Third Circuit's factual finding has

not been shown to be unreasonable. A review of the entire

transcript reveals that Detective Cheramie did not provide

opinion testimony, but merely testified to facts observed and

reported to him by his undercover operative, Mr. Moreau.

**Claim Three - The trial court erred when it permitted the
jury to judge the credibility or reliability of the undercover
police informant identified as "Agent #39 Lamar Moreau." [doc.
1-2, p. 16]**

Petitioner argued Claim Three as Assignment of Error No. 3

in his out-of-time appeal, and thereafter in his writ

application to the Louisiana Supreme Court. He contends that he

was denied due process because, Lamar Moreau, the undercover

agent who worked with Detective Cheramie was not shown to be a

"reliable informant."

In rejecting this Assignment, the Third Circuit observed,

However, this is not a situation where a confidential
informant simply provided information which was used
as a basis for arrest. Informant Moreau contacted
Detective Cheramie and participated in a controlled
buy of cocaine from the Defendant. <u>Moreau testified at
trial and was subject to Defense's cross-examination.
His credibility was an issue for the jury to resolve</u>.
By convicting Mr. Moore, they obviously resolved the
determination in the prosecution's favor. Moreover,

contrary to Mr. Moore's allegations, the State did, in
fact, present the audiotape of the transaction at
trial and played it for the jury. See <u>State v. Moore</u>,
KA 04-822 and KA 04-823 (La. App. 3 Cir. 12/8/2004)
(unpublished) at Vol. 1, Appendix M-1, p. 7.

Indeed, the trial transcript establishes that Moreau
testified at the trial [SCR, Vol. 1, Transcript, pp. 172-197G]
and, as noted by the Court, he was subject to vigorous cross-
examination by the petitioner. As with any fact witness, his
credibility was an issue for the jury to decide.  Determining
the weight and credibility of witness testimony has long been
held to be the "part of every case [that] belongs to the jury,
who are presumed to be fitted for it by their natural
intelligence and their practical knowledge of men and the ways
of men." <u>Aetna Life Ins. Co. v. Ward</u>, 140 U.S. 76, 88, 11 S.Ct.
720, 724-725, 35 L.Ed. 371 (1891), cited in <u>United States v.
Scheffer</u>, 523 U.S. 303, 118 S.Ct. 1261 (1998).

Petitioner's assertions to the contrary are clearly without
a basis in law or fact. He has not shown that the Third
Circuit's decision was an unreasonable application of federal
law and therefore he is not entitled to relief.

***Claim Four - Petitioner was prejudiced by the unreasonable
delay in re-sentencing [doc. 1-2, p. 22]***

36

In this claim petitioner asserts that he was prejudiced by the unreasonable delay in imposing a legal sentence. Petitioner raised this Claim as an Assignment of Error in his out-of-time appeal and thereafter in his writ application in the Louisiana Supreme Court.

The Third Circuit rejected his claim as follows:

In September of 2003, [petitioner] filed a *pro se* Motion to Correct Illegal Sentence in the lower court, raising the claim in which, on review, this court concluded that this fifteen-year habitual offender sentence was null and void. As we stated previously, this court's order of January 27, 2004 ordered the lower court to resentence him. Within approximately two months of our ruling, it complied. Although thirty-eight months lapsed between the vacating of the original sentencing and the resentencing, it was not due to any inordinate delays or bad faith on the State's part. It also does not appear to be due to the Defendant's fault. Apparently, no one was aware of the illegality before it was raised in the September 3 pro se motion. Furthermore, even if Moore were eligible for early release, [State v. Muhammad, 03-2991 (La. 5/25/04), 875 So.2d 45] held that, even, the completion of the sentence for the underlying offenses does not preclude the State from proceeding with habitual offender proceedings. See State v. Moore, KA 04-822 and KA 04-823 (La. App. 3 Cir. 12/8/2004)(unpublished) at Vol. 1, Appendix M-1, p. 13.

While not specified, the Third Circuit's decision implicitly rests upon the notion that petitioner suffered no prejudice from the delay. The original sentence of 15 years

imposed following petitioner's initial adjudication as a second offender was ultimately the sentence that was imposed, and petitioner has been afforded credit for all of the time served. See Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)(Holding that, in the context of the Sixth Amendment right to a speedy trial, the analysis must utilize four factors, including prejudice to the defendant.); see also United States v. James, 459 F.2d 443, 444 (5th Cir. 1972)(Finding an unreasonable delay based on the District Court's misunderstanding of the law, but also finding "... no meaningful loss of or injury to [the defendant's] rights.")

Petitioner has not shown that this result amounted to an unreasonable application of federal law. His claims of prejudice are conclusory and speculative at best.

**Claim Five - The trial court failed to call upon him to tender a plea of guilty to the habitual offender bill.**

Petitioner submitted this Fifth Claim for Relief in his Application for Reconsideration filed after judgment was entered. [doc. 8] He framed the claim as follows, "Petitioner argues that the alleged plea of guilty cannot be deemed voluntary and intelligently entered when to the contrary the

38

trial court never call upon him to tender a plea of guilty to the habitual offender bill, and as such, the record is devoid of such, deeming the plea constitutionally infirm." [doc. 8, p. 7]

Petitioner attempted to raise this claim in his second appeal, however the Third Circuit refused to consider it because only the issue of excessiveness of sentence was properly before the Court. <u>State of Louisiana v. Eugene Henry Moore</u>, 2005-00736 (La. 2/1/2006), 924 So.2d 516 (Table) see also Slip Opinion at doc. 8, pp. 1-6]

Given the tortuous procedural history of this case, it may be unwise to rely upon the procedural default identified by the Third Circuit. Indeed, since petitioner has provided a copy of the transcript of the hearing, and, since the transcript provides ample evidence to allow for prompt resolution of this claim, resolution on the merits is recommended. In essence, petitioner argues that since he did not utter the magic words, he cannot be said to have entered an admission or guilty plea to the habitual offender bill.

The transcript of the proceeding refutes the claim. According to the transcript provided by petitioner, the proceedings began with the following colloquy between the prosecutor, the defendant, his attorney, and the judge:

39

DA: Your Honor, we're in court today – Mr. Moore had previously entered a denial to a bill of information charging him as an habitual offender.

It's my understanding from his attorney, Mr. McHale, that he will at this time admit to his second offender status, based on the information in our bill.

Court: Is that correct, Mr. McHale?

McHale: Yes, sir, Your Honor.

Court: Okay, Mr. Moore, do you understand what they just told me?

Moore: Yes, sir.

Court: That you're admitting to being eligible or exposed to a sentence under the habitual offender law, being a second felony conviction; you understand that?

Moore: Yes, sir.

Court: You're admitting to that?

Moore: Yes, sir. [doc. 8-4, Transcript, p. 22]

La. R.S.15:529.1(D) provides, in pertinent part:

If, at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of a felony under the laws of this state ... the district attorney of the parish in which subsequent conviction was had may file an information accusing the person of a previous conviction... Whereupon the court in which the subsequent conviction was had shall cause the person ... to be brought before it and shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true. If he denies the allegation of the information or refuses to answer or remains

silent, his plea or the fact of his silence shall be
entered on the record and he shall be given fifteen
days to file particular objections to the information,
as provided in Subparagraph (b). The judge shall fix a
day to inquire whether the offender has been convicted
of a prior felony or felonies, or adjudicated a
delinquent for an offense or offenses specified above
as set forth in the information.

The Court complied with the provisions of the above cited

statute.  The transcript provided by petitioner establishes his

admission "... to being eligible or exposed to a sentence under

the habitual offender law, being a second felony conviction..."

His claim, whether exhausted, or procedurally defaulted, or not,

is clearly and unequivocally without a basis in fact, and

dismissal is appropriate.


### Conclusion and Recommendation

The record herein is complete. Petitioner's *habeas corpus*

petition is not time-barred by the provisions of 28 U.S.C.

§2244(d). However, Claim One (sufficiency of the evidence) is

procedurally defaulted; Claims Two (lay witness testimony),

Three (confidential informant) and Four (unreasonable delay in

sentencing) were adjudicated on the merits and petitioner has

not shown that the decision of the State court amounted to an

unreasonable application of the law or facts; and, Claim Five

(plea to habitual offender status) is manifestly without merit and refuted by the record.

**ACCORDINGLY,**

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DISMISSED WITH PREJUDICE.**

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See,* Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir.  1996).**

In Chambers, Alexandria, Louisiana _____, 2010.

JAMES D. KIRK
United States Magistrate Judge